### 2263

ISLE OF PALMS PEST CONTROL COMPANY, Respondent v.
MONTICELLO INSURANCE COMPANY, Appellant.

(459 S.E. (2d) 318)

Court of Appeals

---

*G. Dana Sinkler* and *Elizabeth T. Thomas, Warren & Sinkler*, Charleston, *for appellant.*

*Carl H. Jacobson, Uricchio, Howe, Krell, Jacobson, Toporek & Theos*, Charleston, *for respondent.*

Heard Nov. 2, 1994.

Decided Dec. 12, 1994; Reh. Den. Aug. 4, 1995.

HOWELL, Chief Justice:

Pursuant to its general liability policy with Monticello Insurance Company (Monticello), Isle of Palms Pest Control Company, Inc. (Isle of Palms) brought a declaratory judgment action seeking to require Monticello to provide liability

coverage and defense costs in a third-party action against Isle of Palms for fraud and negligence in connection with its preparation of a termite inspection report. The trial court held that the policy obligates Monticello to indemnify and defend Isle of Palms. We affirm.

## I.

In connection with the sale of a home, Isle of Palms issued a termite inspection letter on January 23, 1990. The letter stated that there was no visible evidence of infestation in the home. The purchaser of the home (Purchaser) subsequently brought an action against Isle of Palms, claiming there was in fact infestation at the time of the report. In his complaint, the Purchaser alleged that Isle of Palms conducted its inspection in a negligent manner. The Purchaser also included allegations of fraud, breach of contract, unfair trade practices, conspiracy, negligent misrepresentation, and breach of warranty on the part of Isle of Palms in connection with Isle of Palms' failure to properly prepare the report.

Isle of Palms brought a declaratory judgment action, arguing that under the policy Monticello was obligated to defend and indemnify Isle of Palms in connection with the action by the Purchaser. Monticello contended that the policy did not provide coverage for the claim made against Isle of Palms by the Purchaser.

In its order, the court found that Isle of Palms "has proven the material allegations of its Complaint by the greater weight or the preponderance of the evidence and there is liability coverage provided in this instance." The court found that "there has been property damage that has been sustained in accordance with the general definitions of the . . . policy, thus affording [Isle of Palms] coverage in this instance."[1]

## II.

On appeal, Monticello contends there is no coverage and no duty to defend because Isle of Palms' negligence in issuing the termite letter does not constitute an occurrence covered under the policy. We disagree.

---

[1] The amount of damages to which Isle of Palms was entitled was preserved for determination at a later hearing.

The policy at issue provides that Monticello will pay all damages Isle of Palms is legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence. The policy defines an occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Questions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the third party's complaint. *C.D. Walters Constr. Co., Inc. v. Fireman's Ins. Co. of Newark, N.J.*, 281 S.C. 593, 316 S.E. (2d) 709 (Ct. App. 1984). If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend. *Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co.*, 274 S.C. 468, 265 S.E. (2d) 38 (1980). Here, the underlying complaint alleges that Isle of Palms negligently performed the inspection, because the property in fact was infested with termites. The complaint further alleges that, as a result of Isle of Palms' negligence, the Purchaser suffered damages, including costs of "repair and efforts to stop the damage." The complaint thus clearly alleges an accident (the negligent inspection) which caused property damage (termite damage). While the complaint also includes allegations of intentional conduct which would not be covered by the policy, the inclusion of some noncovered claims does not abrogate an insurer's duty to defend when a complaint raises claims covered by the policy. Accordingly, the trial court properly held that Monticello owes Isle of Palms a duty to defend against the Purchaser's claims.

Other jurisdictions have likewise determined that damage caused by the negligent issuance of a termite letter is within the scope of a comprehensive general liability insurance policy. In *Posing v. Merit Insurance Co.*, 258 Ill. App. (3d) 827, 196 Ill. Dec. 335, 629 N.E. (2d) 1179 (1994), an exterminator was sued by various parties alleging, *inter alia*, that the exterminator negligently conducted property inspections and failed to discover termite infestation. After the insurer refused to defend, the exterminator brought a declaratory judgment action against its insurer. *Id.*, 196 Ill. Dec. at 337-38, 629 N.E. (2d) at 1181-82. Construing a policy with the same defin-

itions of property damage and occurrence as Monticello's policy, the *Posing* court held that the termite infestation constituted an occurrence, and the damage caused by the termites was property damage within the meaning of the policy. *Id.,* 196 Ill. Dec. at 340, 629 N.E. (2d) at 1184. Similarly, the court held that an insurer had a duty to defend an exterminator against claims of fraud in connection with the issuance of a termite letter in *Fowler Pest Control & Insulation, Inc. v. Hartford Insurance Co. of Alabama,* 512 So. (2d) 88 (Ala. 1987). *See also Hurtig v. Terminix Wood Treating & Contracting Co.,* 67 Haw. 480, 692 P. (2d) 1153 (1984) (where exterminator improperly performed contract to inspect and treat house for termites, claim for resulting property damage covered under comprehensive general liability policy).

Monticello contends that the Purchaser's complaint against Isle of Palms is really one for faulty workmanship, which is not covered by the policy. Monticello relies heavily on *Western Exterminating Co. v. Hartford Accident & Indemnity Co.,* 479 A. (2d) 872 (D.C. 1984) as support for its position. In *Western,* the court held that the insurer had no duty to defend a claim brought against its insured as a result of an inaccurate termite inspection letter. In that case, however, the underlying complaint contained no "allegation that Western's negligence caused an accident resulting in damage to tangible property." *Id.* at 875. The underlying claim in *Western* was thus for economic damages only.

A general liability policy is intended to provide coverage for tort liability for physical damage to the property of others; it is not intended to provide coverage for the insured's contractual liability which causes economic losses. *C.D. Walters,* 281 S.C. at 596-97, 316 S.E. (2d) at 712. It is for this reason that a general liability insurance policy typically does not cover claims of faulty workmanship, but instead covers claims of faulty workmanship that causes an accident. *Id.* Here, however, the faulty workmanship did cause an accident—the improperly performed inspection resulted in continued termite damage. Had there been preexisting termite damage, but no active termite infestation, the Purchaser's claim against Isle of Palms would have been one for faulty workmanship resulting in only economic losses. There would be no possibility of coverage for such a claim because, under that factual sce-

nario, Isle of Palms' improper inspection would not have caused property damage. However, because the Purchaser does allege that Isle of Palms' negligence resulted in property damage, the policy issued by Monticello does provide coverage for such damage, and Monticello is therefore obligated to defend.

## III.

Because we have concluded that the Purchaser's complaint raises claims within the scope of Isle of Palms' policy, we must now determine whether any exclusions to the policy relieve Monticello of its obligation to defend and indemnify. *See USAA Property & Casualty Ins. Co. v. Rowland,* — S.C. —, 435 S.E. (2d) 879 (Ct. App. 1993), *cert. denied* (Feb. 17, 1994) (no duty to defend against claim falling within policy exclusion).

Monticello contends that the professional liability exclusion is applicable and defeats any claim of coverage by Isle of Palms. The professional liability exclusion appears on a page of the policy entitled "Additional Endorsements." The exclusion states that "[a]ll coverage is excluded hereunder for claims arising out of the rendering or failure to render of any professional service by any Insured or any Additional Named Insured." Monticello contends that the claims against Isle of Palms arose from Isle of Palms' rendering of a professional service, to wit, a termite inspection, thus placing the claims outside the policy's scope of coverage. Isle of Palms contends the exclusion is not applicable because the "Additional Endorsements" page was not attached to its policy and the exclusion was not sufficiently brought to its attention.

The trial court found that the professional liability exclusion was not part of the policy because it was not identified on the declarations page and was not properly brought to the attention of Isle of Palms. The court further held that even if the exclusion were part of the policy, it would not bar Isle of Palms' claim. We need not determine whether the "Additional Endorsements" page was in fact attached to the policy, because we agree with the trial court that the professional liability exclusion does not defeat Isle of Palms' claim. *See* Rule 220(c), SCACR (the appellate court may affirm any ruling, order, or judgment upon any ground appearing in the record on appeal).

Monticello contends that the professional liability exclusion is unambiguous and bars Isle of Palms' claim because "professional services . . . is precisely what [the Purchaser's] claim is predicated upon." However, Monticello apparently concedes that the policy would cover damage caused by actual exterminating or spraying by Isle of Palms. Thus, Monticello's position is that inspecting homes and issuing termite letters are professional services excluded from coverage, while actual exterminating is not a professional service.

The policy does not define "professional" or "professional services." In a somewhat different context, our Supreme Court has defined a professional act or service as

> one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. . . . In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself.

*South Carolina Medical Malpractice Liab. Ins. Joint Underwriting Ass'n v. Ferry*, 291 S.C. 460, 463-64, 354 S.E. (2d) 378, 380 (1987). This definition provides no support for Monticello's inspection/extermination distinction. If an inspection is a professional service, then extermination would also be a professional service, given that the same specialized knowledge would be required to properly perform both acts, and given that any extermination would likely involve an inspection as well. Moreover, there is no language in the policy supporting an inspection/extermination distinction, and we find no principled reason to label "inspection" a professional service while labeling "extermination" something other than a professional service. Therefore, to the extent that these services are "professional" services, the professional liability exclusion would preclude coverage for claims arising out of the rendering of *any* of the services offered by Isle of Palms. For example, a claim for property damage caused by improper treatment arises out of Isle of Palms' rendering of professional services, and thus would not be covered as a result of the exclusion.

Isle of Palms purchased a liability insurance policy to protect itself against claims for damage to property of others caused by its negligence. The declarations page of the policy included "exterminator" in the list of covered general liability hazards, and the premium was based primarily on Isle of Palms' receipts from its exterminating business. To give effect to the professional liability exclusion would render the policy virtually meaningless, because it would exclude coverage for all claims arising from Isle of Palms' exterminating services, the very risk contemplated by the parties. *See Canal Ins. Co. v. Insurance Co. of N. Am.,* — S.C. —, 431 S.E. (2d) 577 (1993) (refusing to construe exclusion to prohibit coverage for the only vehicle contemplated by the parties). The internal inconsistency created by an exclusion which purports to bar coverage for claims arising out of the very operation sought to be insured renders the policy ambiguous, and we must resolve that ambiguity in favor of coverage. *South Carolina Budget & Control Bd. v. Prince,* 304 S.C. 241, 403 S.E. (2d) 643 (1991); *Millstead v. Life Ins. Co. of Virginia,* 256 S.C. 449, 182 S.E. (2d) 867 (1971) (ambiguity in exclusion should be resolved in favor of coverage). Accordingly, we refuse to interpret the exclusion so as to bar claims for property damage caused by Isle of Palms' negligence in performing its exterminating services.

Monticello also contends that exclusion (m) precludes recovery for Isle of Palms. Exclusion (m) in relevant part provides that the policy does not apply to

> loss of use of tangible property which has not been physically injured or destroyed resulting from
> (1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
> (2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured. . . .

However, by its terms, exclusion (m) applies only to claims for loss of use of property which has not been physically injured. Because the complaint alleges property damage as a

result of Isle of Palms negligence, this exclusion does not defeat Isle of Palms' claim.[2]

## IV.

In summary, we find that the allegations of the underlying complaint of property damage caused by the negligence of Isle of Palms involve claims covered under the policy issued by Monticello. Consequently, Monticello owes Isle of Palms a duty to defend against these claims. Accordingly, for the foregoing reasons, the order of the trial court is hereby

Affirmed.

SHAW and GOOLSBY, JJ., concur.

---

[2] In its Reply Brief, Monticello for the first time argues that exclusions (n), (o), and (p) also bar Isle of Palms' claim. Because Monticello did not raise these exclusions at trial, and did not argue them in its Initial Brief, the exclusions are not properly before this Court. Nonetheless, we note these exclusions apply to property damage to the insured's products or to work performed by the insured, and to the withdrawal or replacement of the insured's products or work. Here, because the only "product" or work of the insured is the inspection performed by Isle of Palms, these exclusions are clearly inapplicable, and do not remove the Purchaser's claims from the scope of the policy or relieve Monticello of its duty to defend.